May it please this honorable court. May it please my esteemed opposing counsel. I'd like to start today with a little bit of an introduction as to my background and why I find the situation that we're in so interesting. When I started practicing law approximately 10 years ago, I had a trial mentor who was a little short gentleman by the name of Mr. Threatt, who was entering his fifth decade of practice. Mr. Threatt was one of those senior trial litigators that of course loved to tell those wild and woolly stories that I assumed came from the territorial days of yore rather than present day practice of law. This case certainly would lead me to believe that perhaps Mr. Threatt, when we show up in court in front of a judge and say to the judge, That's the key thing, right? You've got to show up. That is the key thing. You don't show up. It's like if you ever played sports, you don't show up, it's a forfeit. That's right. Why is it any different here? It's absolutely different here because instead of what we would expect to step onto a fair playing field for a sports game for instance, we stepped onto a minefield. You did have a scheduling conflict on the day that was set? I did not. But Mr. Dale had an ear thing and he couldn't travel to the hearing? Mr. Dale, one of the necessary witnesses and one of the plaintiffs in that case. The plaintiff couldn't come because he had an ear condition, is that right? No, that's not exactly correct. Okay, what is it? He was under strict instructions from his physician that he had either had a minor stroke or that he had an ear tumor and that travel could be life threatening for him. He could not travel. Why not depose him? Half the witnesses at civil trials these days, if not more, are done by video deposition before the jury. Well, that gets to an interesting point, Your Honor. When it comes to Judge McBride, the idea of using electronics because there's not even a lot of electronic filing in his courtroom permitted at this point was a daunting proposition to try to get him to that point. You're saying he borrows video depositions? I'm not saying he borrows video depositions. I did not see that as a feasible alternative, and I'm sorry, Your Honor, I didn't mean to interrupt. Did you pursue any alternatives? It looks like you just said we can't come, and did you urge any alternatives other than rescheduling? What did you do to try to get the court off of the position that would put your client in a bind, in a terrible bind? Well, Your Honor, we didn't offer any other alternatives. I'll be candid. We asked initially to move it to a date that would have worked. Now, we learned that that didn't work because of the potentially very dangerous condition my client was in, but we initially asked for the court to move it to 30 days to where we wouldn't have had any scheduling conflicts. And we stood ready and willing at any point in any juncture to have accommodated Judge McBride with a status conference, with a scheduling conference, to figure out a date that would have worked. Were you offered an evidentiary hearing to litigate these scheduling issues? As I understand, Judge McBride had suspicions about the doctor's note. He did. And he offered you an evidentiary hearing? He did offer an evidentiary hearing. Did you accept that opportunity? We did not avail ourselves of that opportunity. Why? Why not? That's what's so puzzling in this record. I can appreciate as to why that is so puzzling in this record. I think that the background of this case and my likeness to the equivalent of a legal minefield gets us to the point where we felt there was no opportunity to have ever had a fair trial in front of Judge McBride. But regardless, make a record of that. Let us see what you're talking about. If you think that you didn't have a fair shot, you need to make a record of that. You need to make a record of that every chance you get. And I would submit to the court that we had a record that's longer than my very long arms. But on this point, you have other things that have happened before that you complain about. But where is the record on this point? I will submit to the court we did not on this point. On that point, we did not. I do not think that that is fatal to the concerns that we have in this case. How is that an abuse of discretion for the judge to say I don't think this is strong enough evidence of a real medical issue? How is that an abuse of discretion? I mean there's points he raised. If you want to refute them, you should have gone to the hearing in Fort Worth, but refute them now if the record supports it. If you think he made incorrect observations about the note and all those things. I think he did. I think that supplying the court with a note from the doctor's office on the doctor's letterhead, the fact I believe that Judge McBride focused on is that the doc didn't sign it. I'm sorry, there's substantially enough evidence there. You have to focus on what it said, right? What did it say exactly? I'm informed about a condition, something. I believe it was more forceful than that. It didn't say he couldn't travel to Fort Worth for trial, did it? No, it said that I have informed my patient that he should not be traveling. I'd love to be able to have dictated to the doctor what he should or should not have said to make that clearer, but I believe that was clear enough, especially with the representations of counsel. But it wasn't clear enough to Judge McBride, and that's why you needed to have the hearing. And I appreciate Your Honor's point on that, but I don't think that anything we could have done in that hearing would have changed the outcome. But you have a record now. I absolutely understand and concede that we would have had a record. But I have a record. Dale was never deposed in the case. Dale was deposed in the case. So why not admit the transcript? I mean, that's what depositions are for, unavailable witnesses. Even forgetting the video. McBride doesn't like videos and anything from the last 50 years. Why can't you just put the transcript in? Because the transcript would not have been sufficient in order to achieve the understanding for the jury of what Mr. Dale's testimony actually was. His deposition doesn't get there. Lawyers all the time are unhappy about it. And like I said, tons of civil witnesses are by depo these days. It's just the nature of the business. I understand. And there's often out-of-state witnesses you can't get subpoenaed. I mean, he's a part. I understand that. But witnesses you can't bring in and haul into court, so you have to do a deposition. And that's fair. Absolutely, Your Honor. I would concede that. There's nothing in this deposition that would have gotten to the admissions by a party opponent that we needed his testimony for to corroborate. And on top of that, there's no way that we could have gotten there. Those questions weren't there. Wasn't that your job to get the key evidence and if the witness is unavailable? I didn't know the witness was unavailable. You could have deposed him again. We'll go back to that. You could have deposed him again and asked the key questions. Well, that's perhaps true. But if you look at the very short timetables that Judge McBride was giving us when he reset that hearing and what we argued as to why we asked for the original vacature of the first trial after the mistrial, there was no way that I could have pulled that off. Just plain and simple, there's no way that we could have pulled that off with our small law firm. We had two trials scheduled in the period of time in between when he gave us notice of the trial and when we were set to go to trial again. We asked for that extension, and we asked for a 30-day extension, which might have permitted that, Your Honor, but he did not, for whatever reason, which I believe was an abuse of discretion, give us that amount of fair play. So your position, though, is not only that he should have granted your continuance. You have two other arguments, right, that he shouldn't have dismissed the case when they failed to show up, that they should have considered a lesser sanction. Isn't that one of your arguments, that a lesser sanction needed to either be considered and needed to be imposed first under our case law, and that's what the abuse of discretion was? Is that correct? Do you argue that in your brief? Your Honor, I think that is one of the remedies that we're asking, is that this case should not have been dismissed, but I don't believe that we're focused on that, and if you look at the— But you're not— You haven't even challenged his ruling that since you didn't show up. You challenged everything that happened before that, basically. That's correct, Your Honor. So you're not challenging that the dismissal was too strong of a— that he should have fined you or done something else instead when you didn't show up for trial? No, I'm not saying that it's not too strong. What I'm saying very clearly in our record is that this is a square pig that fits into a square hole. Okay. And that is the square hole of Litkey, and that what Judge McBride did— Bad gumbo, right? I'm sorry? Bad gumbo. Bad gumbo. It's essentially it, and the reason that we focused on that, and that's the case that we placed in front of you as the threshold case. It's the only case we sent into our reply brief. That's not by accident or in an effort— You challenged the mistrial he granted when he thought your two witnesses went beyond the prohibition on insurance and settlement discussions. I don't want to get into the merits of that. Let's say you're 100 percent right. So what? I mean, we can't go— That trial didn't happen. There's no verdict to enforce. So there's no remedy other than setting a new trial, which he did, which you didn't show up for, which you don't challenge. So explain to me how, even if you're right that he shouldn't have granted a mistrial, how does that help you? Well, first of all, to acknowledge to the court that opposing counsel has done a very good job of briefing out why most of those trial errors or most of those errors following the refusal to transfer and following the refusal to grant the motion to dismiss, really, between there and the end to the mistrial, amount to harmless error. I will concede that. I actually believe that, really, when you get down to it, he did offer us that. But the problem is— He offered you the new trial. He offered us a new trial. But that's a futile situation at that point. When you take the totality of what happened— So really it sounds like it all comes down to the continuance issue for you. No, I don't agree with that, Your Honor. Okay, well, explain to me what's your best issue. Our best issue is ultimately the refusal to grant the motion to dismiss, not once but twice. And under this circuit's jurisprudence, I believe that in and of itself was reversible error that this court should consider. What was reversible error in and of itself? Say it again. His refusal first to grant our motion to dismiss when we agreed to pay the taxable cost. The voluntary dismissal, yes. That's a separate reason why you think you should win, totally separate from this whole other point. Your Honor asked about my best reason why I think we should win. That's what I'm asking. I believe that those are our best reasons why we should dismiss. Let me ask you about that issue. And this isn't necessarily what McBride said, but your theory that you're basically entitled to the dismissal, wouldn't that mean that any time someone ends up in a court where they don't like the judge they're assigned in federal court, they would have a right to dismiss the case and file again and hope for a better judge assignment? I believe that's what the Culver House and the Albedor case get to, essentially, is saying when you're the plaintiff, your choice of forum is important. And when you've stepped into a landline and you do not want to be there and you're willing to pay not only the taxable cost, which we agreed to pay, but we agreed to pay all their attorney's fees, however unreasonable they might have been, then absolutely there's no reason why a court shouldn't, in that instance, allow us to volunteer. If the clear purpose is to, because you don't like the judge you ended up with, that you can't do that, and it seems to me you could just keep, I mean, let's say you filed the case in New Orleans federal court. You could just keep dismissing. I don't know, there's seven or eight district judges here. You could just keep dismissing until you get the one you like. I don't think that that's what, it's not just that we just didn't like the judge. It's that we had very good reasons that we wanted to be in the New Mexico forum instead of the Texas forum. And I will admit we did read the map wrong. But you're the plaintiff. That's right. And I admit that. We filed the case wrong. But isn't it true that we have held that the potential for forum shopping does not count as legal prejudice and the motion to dismiss should be legally granted, liberally granted, even when it's forum shopping? That that's not a reason to not grant it. Your Honor, I appreciate that. That's exactly right. Is timing a problem for you? Because I understand that this was ten months into the case and just a few months before trial. Your Honor's talking about timing in terms of statute of limitations. I'm sorry, I apologize. You did not move to voluntarily dismiss quickly. It was, quite a bit of time had passed. You'd already had discovery, you'd already had. No. Is that not true? No, that's not, Your Honor. I'm sorry, let me clarify what I'm saying. At first, you moved to dismiss, but you weren't willing to pay the fees, the attorney's fees. No, we never said that. That's not true either. Tell me more about that. My understanding was the judge turned you down at first because you wouldn't pay opposing counsel's fees. Not because we wouldn't pay, because we didn't say we would pay. So we asked, we agreed that we would be taxed reasonable costs, and he denied saying you didn't agree to pay all of the fees. We turned around and said, Your Honor, that's fine. Under Motion to Reconsider and Rule 54, we absolutely will pay whatever the fees are to move this case. And you did that right away? We did that right after the denial of the motion to dismiss, and he gave us a one-page denial stating this is not well taken and I'm denying your reconsideration, even though we met the condition that he said that we didn't meet. I mean, that really gets down to an abuse of discretion that is kind of unfathomable on a lot of levels. There's really, when it gets to that point— How far away was the trial at that point? That would have been June or July, and the trial was December. And to get to your question about timing, the case was filed in the fall, late fall, November, I believe, and we had his first scheduling conference in December, or a settlement conference in December. The way his trial schedules work, we then ended up filing the motion to transfer not long after that. That was denied, and once that was denied, we immediately turned around and filed the motion to dismiss. There is nothing else that occurred in that period of time as far as discovery or anything else. No acquisitions, no written discovery in that time period? Nothing had occurred in that time period. Really, we'd had the settlement conference. We discussed with opposing counsel that this is a case that should have been properly filed in New Mexico. They conceded that, but opposed our motion to transfer the venue. Then we went to the motion to dismiss, which they also opposed, and we filed that with the court, and that's when we got to the taxable costs, and then he said the fees, and that's how that proceeded. At about that point, that gets to another point where he decides that, to your timing issue, we filed a corresponding case as a placeholder in New Mexico because our statute of limitations was going to run out. I believe it was in September of that year, so we filed a case in New Mexico. We never served it. We didn't do anything with it, but yet that shows up as, I'm sorry, I've run out of time. May I finish that up? You filed a case in New Mexico. What is the relevance of that? The relevance of that is it goes to this intemperate behavior that we received from the judge, and every time that we did something that the opposing counsel would go to him and say, look, these New Mexican lawyers, they just don't get our Texas courts, and here they filed this case in New Mexico. Judge basically waving in his face in an attempt to engender the animus of the court. That's the relevance of this is that we have, for whatever reason, engendered that animus. You've saved time for rebuttal. May it please the Court and counsel, I frankly have very little to add because I think the Court is correct in focusing on the end of this process because while we're here, the dismissal, the dismissal with prejudice, was the end result of basically the trial and post-trial litigation and behavior of the plaintiffs, the appellants. And the question is, did the court abuse its discretion in dismissing the case at that point? I think it's clear that it did not for all the reasons that I think came out a little while ago. All the earlier stuff I think that counsel has conceded was harmless error. How is it harmless to not get a dismissal without prejudice? It seems that our case law is very broad on this. It says that they should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit. And it says also the potential for forum shopping does not count as legal prejudice. So why shouldn't the Court have granted back then? I think that specifically, I think the specific purpose for forum shopping is something that this Court ought not to encourage for the reasons that I think. But no, but we have case law that's published that says it is not legal prejudice that it may be for forum shopping. So that's why it seems that forum shopping is not a reason not to grant the motion under our case law. I agree, and I think the case law does say that. I think the point I was making, and I take it the Court was making by its questions earlier, is a slightly different one, is that while the district court ought not to refuse a motion to dismiss without prejudice because of fear of forum shopping, this Court probably ought not encourage that practice below. Why is it an abuse of discretion to have not granted the motion to dismiss here? It was not an abuse of discretion for the reasons that the Court spelled out, which was that there was no provision made for attorney fees or to make all of them. Well, it wasn't actually refused. I looked at the paperwork. It wasn't refused. It just you demanded them and said they weren't given, and then he said, oh, I will give them. I'm happy to give them. Yeah, and after the fact, there was some negotiation back and forth apparently, and then the position that the appellants settled on was that, well, we'll pay them if the Court orders them whatever the Court wants to order. And at this point, the Court, I believe, took the position that I've already denied your dismissal. I denied it for the reasons I denied it, and I'm not going to. But there wasn't a reason to have denied it because they hadn't refused to pay the fees. So why isn't that the point that the original ruling on that and then the refusal to grant the reconsideration, why weren't those two judicial rulings abuse of discretion or either one of them? And then that would make the case dismissed without prejudice instead of with prejudice. I think there are a couple of things. I think first that I believe there was a denial to pay attorney fees in that first motion to dismiss, and that after the fact, the plaintiffs agreed. Where does it say we refuse to pay attorneys' fees? I don't think it's in the motion, but I think that there was some ‑‑ I think the response was they didn't agree to pay our attorney fees. And the reply wasn't yes, we will. The reply was all the reasons they shouldn't have to pay attorney fees. And then when the motion was denied, they filed a second motion saying, okay, now we're willing to pay attorney fees. Well, why shouldn't it have been granted then? Well, I think it ‑‑ It must be freely given. Well, I think the reason not to grant it at that point is by that time, we are now a number of months into the process. But what had happened? Had any discovery happened? Had any motions for summary judgment, anything that your position was? Well, there had been the denied motion to transfer venue, number one. That had already happened at the time of the original. That's true. And I think that that's actually something significant that we need to consider on both of these, that the case law is pretty clear that you shouldn't be allowed to dismiss to escape an adverse ruling. Typically, it's not venue. In fact, I haven't run across one that is. Why would you even have to file a motion to transfer venue if you could just move to dismiss and refile? Exactly, exactly. Completely undoes that whole ‑‑ Yeah, that's exactly right, Your Honor. But you can do that, can't you? There's no case that says you can't do that for that exact reason. There is no case that I have found that says that you cannot dismiss and refile. I have not found a case that says you cannot dismiss and refile after having been denied a motion to transfer venue. But I would submit that that's because it doesn't happen. I mean, this hasn't been litigated because no one finds themselves in this position because it's so rare that a plaintiff moves to transfer venue to a court in which they could have filed in the first place. They wouldn't be in the situation, right. But they can get out of it by filing to dismiss. There's no ‑‑ the case law is supposed to be granted freely. Except that I think that once they've picked the forum and to whatever the weight the initial selection of forum is worth, and once they're already in that court, and it's not true there were no rulings, this may be the original basis of the antagonism. Is there a time limit on it? It seems you can also then use the dismissal just to go, oh, I don't like that trial setting. The judge doesn't get us continued from our November setting. Let's dismiss and start over somewhere else. I mean, it just seems it can undo the trial court's entire docket management. This case wasn't ‑‑ I mean, it was ten months in, in Fort Worth, when this dismissal was requested. Yeah, and I think that's true, Your Honor. The district court didn't rely on that reason, did they? I'm sorry, Your Honor? The district court did not rely upon that as the reason. Well, the district court, I believe, said that it may have said it in response to the venue issue, and it may not have been in response to the dismissal issue, but it's in the record, and I believe in one of the ‑‑ in the initial denial of dismissal, the court refers to the litigation and the order on venue. And what it said then is that I'm an extremely efficient court, and this is moving towards trial, and we're on track, and there's no reason to move it to a court that's going to be a much longer litigation schedule and later trial setting. It would have been helpful for him to have made that ruling in connection with the motion to dismiss so that we could evaluate the abuse of discretion. Wouldn't it have been helpful? Well, I think it's actually incorporated in the first denial of dismissal, the whole line of motions and orders on venue. And also, it's never been clear, and, you know, when we talk about prejudice to the other party, and I think this is part of the subtext in Elbowar, is that it's never clear in that case exactly what advantage the plaintiff expects to gain by dismissing and refiling because they're trying to get out of a jurisdictional argument in Texas. And in this case, they say they'd rather be in New Mexico, but it's not entirely clear what advantage they expect to gain, and that sort of hampered the court, I think, in crafting its ruling in response to that is another issue. But I think we come down to the same reason that it denied venue, that there was just no purpose to be served in transferring the case or allowing it to be refiled at that point to another federal court with an entirely different docket, an entirely different litigation schedule. Well, it doesn't matter whether there's a purpose or not. They're the master of their seat. It matters because I think it's a mistake for this court to encourage a practice that allows a party to file a case in its chosen forum and then to decide because it doesn't like the judge, doesn't like the rulings of that judge, and doesn't like the direction the litigation is going. And by this time, it's not true that nothing had happened. By the time the second motion is denied, the plaintiffs had already identified their experts. In fact, the defendants had missed their deadline to designate experts, which the court subsequently allowed. But it's not true that nothing had yet happened. By the time the second motion is denied, it was four months from trial, and they were moving into depositions, and no purpose would have been served by allowing the dismissal and starting over somewhere else. I mean, it's counter to the idea of efficient working, of course, and conservation of judicial resources to allow that at that stage. And I think timing— Don't you ever been in state court? I'm sorry, Your Honor? Been in state court? Yes. You can nonsuit at any time. Well, it's a different rule. You can nonsuit all the time. In Texas state court, that's true, and it's a different rule. But under this rule, it's supposed to be freely given, and you can nonsuit. Well, it says— It says legal prejudice. It says freely given, but then once it's not freely given, it's up to the appellant to show that it was an abuse of discretion. I agree. And I don't think that this record supports an abuse of discretion. I think the court was within its discretion to say that there had not been provision made for attorney fees, and I think in incorporating its orders on venue, it also makes it clear that the mere forum shopping at this point was inappropriate. It's also rather late in the litigation by this time, and by the time this whole dismissal issue has worked out, it's now four months from trial. If I could return very briefly to the end of this whole process, and as counsel conceded all this is harmless error, what the nonsuit—I'm sorry, not the nonsuit— What's the harmless error? What the mistrial— The mistrial is harmless error. No, no, no, no. The venue and the dismissal are harmless error. I heard counsel— I don't think he said the dismissal was harmless error because it's a dismissal without prejudice or with prejudice. Well, whether he intended to concede that or not, that's what I heard a moment ago, is that he conceded that everything prior to the events that led up to the dismissal with prejudice were all harmless error. And I think it was for this reason, that what we get down to is we eventually had a trial. We had a trial in a federal court. We had a trial in a federal court of appropriate jurisdiction. And the issue that led to the mistrial there and in the subsequent fighting and the dismissal with prejudice, all are application of federal rules. It's not state law. It's not New Mexico law versus Texas law. It's do the federal rules of evidence prohibit the evidence that they repeatedly tried to get in at trial and had been warned in advance by way of limine not to get in. And once that happened, I think the court was clearly within its discretion to grant the mistrial. I think that it became clear that they were going to get a trial setting very quickly, especially with the experience that everyone had in Judge McBride's court. By that time, it was going to be with little warning and quick. When that happened, and this was after some very angry litigation between the parties over mutual allegations of witness tampering and intimidation, and that became one of their bases that they argued stringently below as to why they shouldn't be required to present themselves for trial when the district court wanted them to, was because that it had failed to make appropriate accommodations for this intimidation of this witness, which wasn't true. The court had offered the services of the marshal service to protect him if needed. At any point, then when the trial gets ordered and they ask for continuance, and here's where we get to the lesser sanctions. I think there were, if not lesser sanctions, there were certainly lesser accommodations. The court partly granted the continuance and it required that they be at trial eight days later than what he had initially ordered. And when they came up with new reasons why that date wouldn't do, the court pointed out that I accommodated all of your conflicts in the first motion. Now you're asking me to move it again. Counsel says he's not arguing lesser sanctions should have been our order, it says. That's true. That's true. Thank you, Your Honor. I've got to come back to the dismissal or the denial of the Rule 41 request to dismiss. It's only, it just goes barely over a page. Where do you see, I think you were trying to say that they incorporate the venue ruling and all that. I may have it confused with another order, Your Honor. If it's not there, it's not there, and I apologize. But most of his orders tend to have lengthy recitations of the whole history of the case. If he didn't do it there, I apologize. I thought I had read it there. Just saying a footnote, it also does not appear the parties have taken into account defendants would need to retain local counsel in New Mexico. Right. But I don't see where it discusses the venue. And I apologize if I misstated the record. If he didn't, he didn't. But I still think that given the, what led up to the attempt to dismiss just immediately prior was the adverse ruling on venue. And I think there would be something odd in allowing, and in fact, in Texas, since you bring up the non-suit practice in Texas, Your Honor, that it's automatic. But once venue has been decided, you can't. Once you non-suit, then you're stuck with the original venue if you try to refile. So, and I think that that's, there's, in this case, there would be something odd about allowing a plaintiff to pick a forum and then decide abruptly sometime into it after, and all that had really happened in terms of friction with the trial court was difficulty filing an amended complaint. But for all I know, that's what gave rise to all of this. They had multiple attempts to get an amended complaint filed, and they may have decided this court just wasn't worth it. It's hard to know. But then they attempted to move the case to another court in which, really, they could have filed in the first place. There was nothing that changed, nothing that happened. The stuff about what we learned during service, none of that's true because they knew and argued consistently that all of the acts that gave rise to the cause of action occurred in New Mexico. So for whatever reason, they decided they no longer wanted to be in this court. They wanted to go to New Mexico, and then the court denied it, and I think it was well within its jurisdiction to do so, and I don't think they contend otherwise any longer. I think then to allow the plaintiff to, having suffered the adverse decision on that, to then turn around and say, King's X, you can't tell us we're not going to New Mexico because we're out, when that itself is something that requires an order of the court, the dismissal is reviewed for abuse of discretion, and I don't think the record supports an abuse of discretion on that or on anything else in this file. Unless the court has other questions, I think I'll leave it there and ask that the court affirm the dismissal with prejudice in this case. I think we have your honor. Thank you. Thank you, Your Honor. I would like to start by clarifying a point, and I think Your Honor has touched on this. When I said that in discussing lesser sanctions, I would clarify that I don't think that lesser sanctions would fix the problem in this case. The problem in this case is that we have these abuses of discretion early in the case, not late in the case, but early in the case when we tried to dismiss. This happened. That's where the error that was not harmless occurred. Now, we went on and the saga went further after that, and there's certainly the saga after the mistrial that we could look at, but really what we're looking at and focusing on are those errors as the clear manifestation of reversible error that was not without harm. What's your best case for that? I believe Your Honor touched on the fact that form shopping and the reason that we ultimately— Do you have a case for us? I believe that there's a case cited in the briefing that discusses that when it comes to form shopping that it's— and I might be misremembering, this might actually be in our motion to transfer venue or in one of the motions to dismiss—that form shopping by plaintiffs is as American as apple pie. We had our reason— Form shopping, which does have a long history of getting your preferred form, the jury you're going to like. Is there a difference between that and trying to undo court rulings that have already been made? As far as court rulings that had already been made at that point, there was one ruling refusing our amended complaint because we had inadvertently used resides instead of domiciled. That's the only ruling that it would have disturbed at the point in the case where we tried to transfer. I think there were some expert deadlines and things like that that had been litigated. But that was after we'd filed the motion to dismiss and after we'd filed the motion to transfer venue. The venue came before the dismissal. I had those out of order. I apologize. Venue and then the dismissal. Now, counsel is correct that in between the dismissal, the first denial of the dismissal, and the denial of our reconsideration, the deadline for disclosure of experts and reports ran. We met that deadline. We were still participating in good faith. They did not. And then what happened next, by granting them leave so far out of time to grant us their experts and so close to the end of discovery, gets the prejudice to us. And then a denial of a joint motion by both the parties to say, Your Honor, because of what's been going on, we're not ready to go in this case. This case hasn't progressed to the point where the parties are ready to go. So to say that there was prejudice at any point up to that point for the defendants is just simply not factually correct. So if we allow you the voluntary dismissal after the denial of the venue transfer, what is to prevent every person who's denied venue transfer from simply undoing, from playing that same trick? I'll just move to dismiss and refile somewhere else. Is there a limiting principle there, or are we just simply creating a tool for litigants? I don't think there's a limiting principle yet in the case law. I believe that, Judge Costillo, that you have perhaps touched on some of the reasoning behind that. And I think it gets to the other question about how far into the process you were. But I don't think that that shows up in the case law yet at this point. It gets to the point where if there is no clear legal prejudice to the defendants, we should have been allowed to dismiss. I guess the one difference is if the statute, there is a limit in that the statute might run. Whereas a venue transfer, you still have the same filing date from when you first filed the lawsuit that's going to be transferred. There is a limit on dismissing and refiling in that the statute could be an issue. Which we were cognizant of, which is why ultimately while the motion to reconsider was pending, we filed the corresponding placeholding case in New Mexico. Did you serve it? We did not serve it because at that point there's still an open case. So until the case has been dismissed in Texas, we did not believe it would have been appropriate to serve it. We did not foresee that when we said, Your Honor, whatever the amount of fees you think they are entitled to is, please, we'll pay it, let us leave, that he would deny that. I still— How does that work from a remedy standpoint here then? If we were to agree with you that the dismissal was improper, we granted a timely file in New Mexico? And that gets to the reason— Wherever you want to file? And that gets to the reason that we point out the rest of the errors throughout the course of this trial. We believe that those are—we supply those to the court, and we submit that ultimately the remedy that you—one of the remedies you could grant that we've asked for is to just remand this back to the same district and leave the decision on the transfer alone. But we don't believe we can obtain a fair trial in front of Judge McBride, and that's what this really comes down to. What do you—your time's up, but what do you want us—what relief specifically would you want us to order? I believe on the conclusion of our opening brief we asked first for a remand and an order to transfer the case to New Mexico. If this court is unwilling to touch the transfer order, we're asking for an order of remand and for the case to be heard by another judge so that we can obtain a fair trial— In Fort Worth. In Fort Worth. In the northern district, at least. Those are the two remedies, and we would be satisfied with either. Our preference is, of course, to transfer to New Mexico. I know your time has expired, but I don't understand what basis you would have to get that as the remedy for not getting a non-suit. I mean, that is—why wouldn't the remedy be that we've changed the dismissal from prejudice to not prejudice and we all go henceforth without day? Because with the statute— Because then you can't refile. But that's not— We don't have—then we've lost our case in New Mexico. But that's not—but you get the remedy that's associated with the harm that you suffered. Was there an equitable tolling argument? But that's for that other court, isn't it? And I—if I might, just to answer that point, I believe that that's the reason why this is a unique situation where when you have a record that is replete with an abuse of discretion, like we have that fits into the lit-key box, that the only remedy that this court can do in order to ensure substantial justice are the two remedies that we've asked for. That's why I ask that. Thank you, Kevin. Thank you. We have your argument. This concludes the arguments for the day. The court will stand in recess until tomorrow morning. Thank you very much.